Filing #73266318 E-Filed 06/07/2018 06:04:48 PM

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR OSCEOLA COUNTY, FLORIDA
CIVIL ACTION

HINES INTERESTS LIMITED PARTNERSHIP,
a Texas limited partnership; URBAN OAKS
BUILDERS, LLC, a Delaware limited liability
company; 1662 MULTIFAMILY LLC, a Delaware
limited liability company; HINES 1662
MULTIFAMILY, LLC, a Delaware limited liability
company; HINES INVESTMENT
MANAGEMENT HOLDINGS LIMITED
PARTNERSHIP, a Texas limited partnership;
HIMH GP, LLC, a Delaware limited liability
company; HINES REAL ESTATE HOLDINGS
LIMITED PARTNERSHIP, a Texas limited
partnership; JCH INVESTMENTS, Inc., a Texas
corporation;

     Plaintiffs,                CASE NO.

v.

SOUTHSTAR CAPITAL GROUP I, LLC, a
Florida limited liability company; COTTINGTON
ROAD TIC, LLC, a Delaware limited liability
company; DURBAN ROAD TIC, LLC, a
Delaware limited liability company; COLLIS
ROOFING, INC., a Florida corporation; DA PAU
ENTERPRISES, INC., a Florida corporation;
FLORIDA CONSTRUCTION SERVICES, INC.,
a Florida corporation; STRUCTURAL
CONTRACTORS SOUTH, INC., a Florida
corporation; NAVIGATORS SPECIALTY
INSURANCE COMPANY, a New York
corporation; GEMINI INSURANCE COMPANY,
a Delaware corporation; and IRONSHORE
SPECIALTY INSURANCE COMPANY, an
Arizona corporation,

     Defendants.

_____/

## COMPLAINT FOR DECLARATORY
## RELIEF AND DEMAND FOR JURY TRIAL

Plaintiffs, HINES INTERESTS LIMITED PARTNERSHIP, a Texas limited

partnership ("Hines Interests LP"), URBAN OAKS BUILDERS, LLC, a Delaware limited

liability company ("UOB"), 1662 MULTIFAMILY LLC, a Delaware limited liability company ("1662 Multifamily"), HINES 1662 MULTIFAMILY, LLC, a Delaware limited liability company ("Hines 1662"), HINES INVESTMENT MANAGEMENT HOLDINGS LIMITED PARTNERSHIP, a Texas limited partnership ("Hines Investment"), HIMH GP, LLC, a Delaware limited liability company ("HIMH"), HINES REAL ESTATE HOLDINGS LIMITED PARTNERSHIP, a Texas limited partnership ("Hines Real Estate"); JCH INVESTMENTS, Inc., a Texas corporation ("JCH"), (collectively referred to as the "Plaintiffs"), by and through the undersigned counsel, hereby file this Complaint for Declaratory Relief and Demand for Jury Trial against Defendants, SOUTHSTAR CAPITAL GROUP I, LLC, a Florida limited liability company ("Southstar"), COTTINGTON ROAD TIC, LLC, a Delaware limited liability company ("Cottington"), DURBAN ROAD TIC, LLC, a Delaware limited liability company ("Durban Road"), COLLIS ROOFING, INC., a Florida corporation ("Collis"); DA PAU ENTERPRISES, INC., a Florida corporation ("Da Pau"), FLORIDA CONSTRUCTION SERVICES, INC., a Florida corporation ("FCS"), STRUCTURAL CONTRACTORS SOUTH, INC. ("Structural"), GEMINI INSURANCE COMPANY, a Delaware corporation ("Gemini"), and IRONSHORE SPECIALTY INSURANCE COMPANY, an Arizona corporation ("Ironshore"), NAVIGATORS SPECIALTY INSURANCE COMPANY, a New York corporation ("Navigators"), and allege as follows:

## PARTIES, JURISDICTION, AND VENUE

1.  Plaintiff, Hines Interests Limited Partnership is a Texas limited partnership.

2.  Plaintiff, Urban Oaks Builders, LLC, is a Delaware limited liability company.

3.  Plaintiff, 1662 Multifamily LLC, is a Delaware limited liability company.

2

4.     Plaintiff, Hines 1662 Multifamily, LLC, is a Delaware limited liability company. Plaintiff, Hines Investment Management Holdings Limited Partnership, is a Texas limited partnership.

5.     Plaintiff, HIMH GP, LLC, is a Delaware limited liability company.

6.     Plaintiff, Hines Real Estate Holdings Limited Partnership, is a Texas limited partnership.

7.     Plaintiff, JCH Investments, Inc., is a Texas corporation.

8.     Upon information and belief and at all times materials hereto, Defendant, Southstar Capital Group I, LLC, is a Florida limited liability company.

9.     Upon information and belief and at all times materials hereto, Defendant, Cottington Road TIC, LLC, is a Delaware limited liability company.

10.    Upon information and belief and at all times materials hereto, Defendant, Durban Road TIC, LLC, is a Delaware limited liability company.

11.    Upon information and belief and at all times materials hereto, Defendant, Collis Roofing, Inc., is a Florida corporation with its principal place of business in Florida, conducting business in and throughout the State of Florida.

12.    Upon information and belief and at all times materials hereto, Defendant, Da Pau Enterprises, Inc., is a Florida corporation with its principal place of business in Florida, conducting business in and throughout the State of Florida.

13.    Upon information and belief and at all times materials hereto, Defendant, Florida Construction Services, Inc., is a Florida corporation with its principal place of business in Florida, conducting business in and throughout the State of Florida.

3

14.    Upon information and belief and at all times materials hereto, Defendant, Structural Contractors South, Inc., is a Florida corporation with its principal place of business in Florida, conducting business in and throughout the State of Florida.

15.    Collis, De Pau, FCS and Structural shall collectively be referred as to the "Subcontractor Defendants."

16.    Upon information and belief and at all times materials hereto, Defendant, Gemini Insurance Company, is a Delaware corporation. Upon information and belief, at all times relevant herein, Defendant, Gemini Insurance Company was authorized to and doing business in the State of Florida.

17.    Upon information and belief and at all times materials hereto, Defendant, Ironshore Specialty Insurance Company, is an Arizona corporation. Upon information and belief, at all times relevant herein, Defendant, Ironshore Specialty Insurance Company was authorized to and doing business in the State of Florida.

18.    Upon information and belief and at all times materials hereto, Defendant, Navigators Specialty Insurance Company, is a New York corporation. Upon information and belief, at all times relevant herein, Defendant, Navigators Specialty Insurance Company was authorized to and doing business in the State of Florida.

19.    This is an action for damages and for declaratory relief, jurisdiction for which is given to this Circuit Court for the State of Florida pursuant to § 86.011 Florida Statutes.

20.    The amount in controversy exceeds the Fifteen Thousand Dollars ($15,000.00) jurisdictional threshold of this Court, excluding attorney's fees, costs, and interest.

4

## THE PROJECT

21.    On or about July of 2014, 1662 Multifamily, contracted with UOB for the construction of a 306 unit apartment project located at 1662 Celebration Blvd., Celebration, Florida 34747, then known as "Aviva at Celebration" and currently known as "Sola at Celebration" (hereinafter "the Project").

22.    The Project consisted of six identical four-story residential apartment buildings and a clubhouse.

23.    1662 Multifamily was the original owner of the Project.

24.    UOB was retained by 1662 Multifamily to be the General Contractor and to construct the Project.

25.    UOB contracted with the Subcontractor Defendants on the Project.

26.    Each of the Subcontractor Defendants entered into a subcontract with UOB as to the Project. The Subcontracts are attached as **Exhibits A, B, C, and D.**

27.    Each of the Subcontracts contained requirements that the respective Subcontractor Defendant agrees to protect, defend, pay, indemnify and hold 1662 Multifamily and UOB harmless from all claims, demands, action, liabilities, losses, damages, or expenses which may arise from alleged or actual damage to any property.

28.    As part of the Subcontracts, the Subcontractor Defendants were enrolled in a controlled insurance program ("CIP") for the Project, which provided general liability insurance for the Contractor and the Subcontractor Defendants' work on the Project.

29.    CIPs are standard in the industry for such large residential projects, including the Project at issue. Under CIPS, usually the owner/developer, general contractor and all of the subcontractors become insureds under a single policy that covers a single construction project, or in some cases like here, multiple projects.

5

30.     The purpose of the CIP was to drive costs down as to defense obligations and streamline indemnity and risk transfer as to the Project. One of the primary understood purposes of controlled insurance programs is to allow the parties to mount a "unified" defense avoiding disputes between the developer, contractor, subcontractors in trades who are involved in the controlled insurance program. By providing for the unified defense of this matter through the general contractor and developer CIP intended to avoid the necessity of the contractor and developer pursuing indemnity and defense claims against the subcontractors which claims constitute covered contractual liabilities under the standard commercial general liability form. However, when any party to a controlled insurance program is required to pursue its defense pursuant to an indemnity claim, thus necessarily pursuing a contractual liability/insured contract claim, there is a threat of diminished limits. The CIP Manual is attached as **Exhibit E.**

31.     The Subcontractor Defendants were enrolled under the CIP and thus qualify as insureds under the CIP.

## THE INSURANCE POLICIES

32.     For this Project and other projects, the Hines Interests LP and/or UOB procured CIP policies through Gemini, Ironshore and Navigators.

33.     Gemini issued to Hines Interests LP and UOB a "Commercial General Liability Policy," under policy number VCWP0001075 insuring period from June 28, 2012 through July 31, 2017 (hereinafter the "Gemini Policy"). A copy of the Gemini Policy is hereto attached as **Exhibit F.** To the extent the Gemini Policy is incomplete, Plaintiffs will be seeking a true and accurate copy of the Gemini Policy in discovery and the Gemini Policy will be filed separately in the court records, to the extent necessary.

6

34.    The Gemini Policy provides the following limits: $2,000,000 each occurrence; $4,000,000 general aggregate; $4,000,000 products-completed operations aggregate limit.

35.    Ironshore issued to UOB an "ExcessProtect Commercial Excess Liability Policy", under policy number 00102500 insuring period from June 28, 2012 through July 31, 2017 (hereinafter the "Ironshore Excess Policy"). A copy of the Ironshore Excess Policy is hereto attached as **Exhibit G.** To the extent the Ironshore Excess Policy is incomplete, Plaintiffs will be seeking a true and accurate copy of the Ironshore Excess Policy in discovery and the Ironshore Excess Policy will be filed separately in the court records, to the extent necessary.

36.    The Ironshore Excess Policy provides the following limits as modified by Endorsement No. 15: $10,000,000 each occurrence, per claim or per loss; $25,000,000 general aggregate; $20,000,000 product/completed operations aggregate.

37.    The Ironshore Excess Policy contains an "ExcessProtect Schedule of Underlying Insurance" Endorsement, Form CEL.END.001(10/11), which provides that the controlling underlying insurance is Gemini Policy.

38.    Navigators issued to UOB a "Follow Form Excess Liability Policy," under policy number SE12FXS754225IC insuring period from June 28, 2012 through July 31, 2017 (hereinafter the "Navigators Excess Policy"). A copy of the Navigators Excess Policy is hereto attached as **Exhibit H.** To the extent the Navigators Excess Policy is incomplete, Plaintiffs will be seeking a true and accurate copy of the Navigators Excess Policy in discovery and the Navigators Excess Policy will be filed separately in the court records, to the extent necessary.

7

39.   The Navigators Excess Policy provides the following limits as modified by "Amendment – Aggregate Limits of Insurance" Endorsement, Form NAV-ECD-100 (3/05): $15,000,000 each event; $15,000,000 general aggregate; and $15,000,000 for products-completed operations aggregate.

40.   The Navigators Excess Policy contains an "Amendment-Schedule of Underlying" Endorsement, Form NAV-ECD-104 (05/10), which provides that the Ironshore Excess Policy as underlying insurance.

41.   Plaintiffs have complied with all conditions precedent to the filing of this lawsuit. Alternatively, to the extent that Plaintiffs have failed to comply with any conditions precedent, the failure of Plaintiffs to comply with same neither prejudiced nor represented a material breach of the Gemini Policy, Ironshore Excess Policy, and/or Navigators Excess Policy (collectively the "CIP Policies"), or compliance with said conditions precedent has been waived.  Alternatively, Gemini, Ironshore, and/or Navigators are estopped from asserting any defenses related to conditions precedent.  More specifically, Plaintiffs have plainly given notice of the claims which are the subject of the lawsuit to Gemini, Ironshore, and/or Navigators and/or its designated agents for receiving notice of the lawsuit and/or Gemini, Ironshore, and/or Navigators was plainly aware that Plaintiffs were under assault, and are entitled to a defense under the Gemini Policy, Ironshore Excess Policy, and/or Navigators Excess Policy.

## THE CLAIMS AND UNDERLYING ACTION AGAINST THE HINES ENTITIES

42.   The original construction of the Project was completed in February 2016. On or about July 1, 2016, Southstar, as manager and agent for Cottington and Durban Road, entered into an agreement with 1662 Multifamily to purchase the Project.

8

43.    Southstar has made claims against the Plaintiffs on the Project, claiming damages for defective construction and other claims. Southstar has estimated the cost of the repairs required due to the allegedly defective work and the resulting damages (including lost rent allegedly caused by the need to vacate the apartments as a result of the defective work) at more than $45,000,000, which damages continue to escalate at over $451,000 each month for the lost rent claim alone.

44.    On or about February 13, 2018, Southstar, Cottington, and Durban Road made claims and filed suit against 1662 Multifamily, Hines 1662 Multifamily, Hines Investment, HIMH GP, LLC, Hines Real Estate, Hines Interest LP, JCH Investments, and UOB for construction defects and other claims in the matter styled Southstar Capital Group I, LLC, et. al. v. 1662 Multifamily LLC, et. al., Case No. 2018-CA-000415, pending in the Circuit Court of the Ninth Judicial Circuit in and for Osceola County, Florida (the "Underlying Action").  A copy of the Underlying Action Complaint is attached hereto as **Exhibit I.**

45.    In the Underlying Action, Southstar, Cottington, and Durban Road have alleged, *inter alia*, claims for damages proximately caused by defects and deficiencies in the construction of the Project.

46.    The  Underlying  Action  Complaint  contains  the  following  relevant allegations:

   a. Defective construction of the structural elements that was intentionally and actively concealed and not disclosed in the As-built Record Drawings;

   b. Defective construction that constitutes Building Code Violations.

   c. Defective construction of the shear walls as required by the original plans and specification for construction of the Project and Building Code, including, but not limited to, improper spacing of framing elements, improper fasteners and fastener spacing, failure to include support trusses and failure

9

to properly install required strapping, all of which would have been readily observable by the Hines Defendants before the drywall was installed.

d. Tension Rods that were not certified as to proper tension, and failed to meet the requirement for anchorage in foundation elements.

e. Improper construction of structural members, including, but not limited to, columns, window jambs, door frames and cantilevering for the balconies.

f. Improper installation of structural Zip Board sheathing as part of the building envelope, including over penetration of the fasteners and improper installation of required board tape, resulting in deterioration of the Zip Board from water intrusion.

g. Improper water proofing and flashing at balconies, windows, and roofs, including, but not limited to the failure to install required weep screeds to allow water to escape the drainage plane system, failure to properly install flashing tape at balcony, roof and windows, and [sic].

See **Exhibit I**, pp. 6-7, ¶ 26(a)-(g).

47.     The Underling Action Complaint stated that defects resulted in damage to other work on the Project, stating:

a.  Water intrusion damaging other work elements of the buildings and work of other subcontractors, including, but not limited to, framing and interior finishes (i.e. drywall, wood molding, cabinetry, carpeting, flooring, and electrical components) and resulting in mold growth;

b. The need for extensive replacement of structural Zip Board sheathing due to deterioration from water damage;

c. Costs associated with removing drywall and stucco cladding to investigate and repair damage to various elements of the construction and defective work identified during Plaintiffs' investigation, as well as subsequent replacement of the drywall and stucco cladding;

d. Costs associated with returning affected units to market ready condition and repair affected common areas;

e. Loss of rental income due to the defective construction and resultant evacuation order, which remains ongoing;

f. Costs associated with various professionals engaged to perform a full evaluation of defects and damage and participate in the development of repair protocols;

g. Stigma damages resulting from the defective construction and resultant evacuation order.

See **Exhibit I**, p. 8, ¶27(c)i-vi.

48.     Upon information and belief, the Subcontractor Defendants performed work that otherwise impacted or contributed to the damages or contributed to the damages alleged by Southstar, Cottington, and Durban Road in the Underlying Action Complaint.

49.     Plaintiffs have demanded that Gemini, Ironshore, and Navigators defend them for the claims and in the Underlying Action. Instead of responding to the claims alleged in the Underlying Action, Gemini, Ironshore and Navigators have all failed to fulfil their contractual obligations, thereby giving rise to this action.

50.     In light of the fact that Gemini, Ironshore and Navigators have not defended us, Plaintiffs have demanded that the Subcontractor Defendants defend Plaintiffs pursuant to their indemnity and defense obligations as set forth in paragraph 27.

51.     Because Southstar estimated damages amounts to over $45,000,000, and damages are rapidly escalating every month, the overall integrity of the CIP Policies and availability of the policy limits are at risk of exhaustion. The indemnity-based claims referenced in paragraphs 27 and 50 further threaten to exhaust the CIP Policies' limits. Moreover, the CIP Policies insured other projects, and to the extent that any claims are made on those projects, the CIP policies are at further risk of exhaustion.

52.     Given Gemini, Ironshore and Navigators' breach to their insureds, the CIP Policies are in danger of exhaustion.

**COUNT I**
**ACTION FOR DECLARATORY RELIEF**
**AGAINST GEMINI & DEMAND FOR JURY TRIAL**

53.     Plaintiffs re-allege all allegations contained in paragraphs 1 through 53,
and incorporate them herein by reference.

54.     Plaintiffs have made claims under the Gemini Policy for the claims in the
Underlying Action.

55.     Plaintiffs are in doubt as to their rights, duties, and obligations owed to them
pursuant to the Gemini Policy, including, but not limited to:

   a. The applicability of the Gemini Policy to the damages as alleged in the
      Underlying Action;

   b. The Subcontractor Defendants are insureds under the Gemini Policy;

   c. Whether the damages alleged in the Underlying Action constitute "property
      damage";

   d. Whether there is an "occurrence";

   e. Whether the damages alleged in the Underlying Action constitute more than
      one "occurrence";

   f. Whether the damages sustained constitute a covered loss under the Gemini
      Policy in the Underlying Action; and

   g. Whether Florida or Texas law applies to the interpretation of the Gemini
      Policy.

Thus, Plaintiffs are in need of and entitled to a judicial declaration of their rights,
duties and obligations, regarding the same under the Gemini Policy. As such, an actual
controversy exists between Plaintiffs and Gemini.

56.     To the extent that it is determined that there is no defense obligations owed
to the Plaintiffs for the claims asserted in the Underlying Action based upon their status
as insureds under the Gemini Policy, the Plaintiffs will seek to enforce their indemnity

12

based defense obligations owed by the Subcontractor Defendants. This necessarily creates an insured contract under the Gemini Policy and puts the Plaintiffs and the Subcontractor Defendant in conflict as to the availability of insurance under the Gemini Policy to satisfy the claims made in the Underlying Action and the indemnity obligations.

57.    Plaintiffs have been required to hire the undersigned to prosecute this action and are contractually obligated to compensate the undersigned for their services. Plaintiffs claim their attorneys' fees, legal assist fees, and costs pursuant to §§ 627.428, 57.104, 57.041, and/or 626.9373, Fla. Stat., and/or § 542.060 Tx. Ins. and §38.001 Tx. Civ. Prac. & Rem. which are/may be applicable to this litigation.

58.    All parties having any interest in the declarations sought and all other persons having interest therein or adversely affected are joined in this action.

59.    It is also requested that this Court retain jurisdiction for supplemental relief pursuant to §86.061 Florida Statutes.  Said supplemental relief may include, but not be limited to, claims for damages and/or extra-contractual damages as appropriate, and any determinations relative to coverage for indemnification for the claim and/or the scope of coverage available for the damages alleged in the Underlying Action. Plaintiffs assert the instant allegation purely for the purpose of preserving said claims and are not seeking a declaration relative to any supplemental relief at this time.

WHEREFORE, the Plaintiffs respectfully request that this Honorable Court declare the rights of the parties as follows:

   a.  That this Court has jurisdiction over the subject matter;

   b.  That this Court has jurisdiction over the parties in this matter;

   c.  That the Gemini Policy applies to the damages as alleged in the Underlying Action;

13

d. That Gemini owes a duty to defend Plaintiffs from any and all claims in the Underlying Action;

e. That Gemini owes a duty to indemnify Plaintiffs from any and all claims in the Underlying Action;

f. That the damages alleged in the Underlying Action constitute "property damage";

g. That the damages alleged in the Underlying Action constitute an "occurrence";

h. That the damages alleged in the Underlying Action constitute more than one "occurrence";

i. Whether the damages sustained constitute a covered loss under the Gemini Policy;

j. That the Gemini Policy provides coverage for Plaintiffs' liability;

k. The Subcontractor Defendants are insureds under the Gemini Policy;

l. Determine whether Florida or Texas law applies to the interpretation of the Gemini Policy;

m. That Plaintiffs have the right to control the defense in the Underlying Action due to the breach of the Policy;

n. That the Gemini Policy provides coverage for Plaintiffs' legal expenses incurred in addressing the claims of Southstar, Cottington, and Durban Road in the Underlying Action;

o. That Gemini owes attorneys' fees and costs pursuant to Florida Statutes §§ 627.428, 57.104, 57.041, and/or 627.9373 and/or § 542.060 Tx. Ins. and §38.001 Tx. Civ. Prac. & Rem.;

p. That this Court retain jurisdiction to grant supplemental relief pursuant to § 86.061, Florida Statutes, including but not limited to any determinations relative to coverage for indemnification for the claim and/or the scope of coverage available for the damages alleged in the Underlying Action and pursuit of extra-contractual damages; and

q. All other relief as this Honorable Court deems just and proper.

14

**COUNT II**
**ACTION FOR DECLARATORY RELIEF**
**AGAINST IRONSHORE & DEMAND FOR JURY TRIAL**

60.     Plaintiffs re-allege all allegations contained in paragraphs 1 through 53, and incorporate them herein by reference.

61.     Plaintiffs have made claims under the Ironshore Excess Policy for the claims in the Underlying Action.

62.     Plaintiffs are in doubt as to their rights, duties, and obligations owed to them pursuant to the Ironshore Excess Policy, including, but not limited to:

  a. The applicability of the Ironshore Excess Policy to the damages as alleged in the Underlying Action;

  b. The Subcontractor Defendants are insureds under the Ironshore Excess Policy;

  c. Whether the damages alleged in the Underlying Action constitute "property damage";

  d. Whether the damages alleged in the Underlying Action constitute more than one "occurrence";

  e. Whether the damages sustained constitute a covered loss under the Ironshore Excess Policy; and

  f. Whether Florida or Texas law applies to the interpretation of the Ironshore Excess Policy.

Thus, Plaintiffs are in need of and entitled to a judicial declaration of their rights, duties and obligations, regarding the same under the Ironshore Excess Policy. As such, an actual controversy exists between Plaintiffs and Ironshore.

63.     To the extent that it is determined that there is no defense obligations owed to the Plaintiffs for the claims asserted in the Underlying Action based upon their status as insureds under the Ironshore Excess Policy, the Plaintiffs will seek to enforce their

indemnity based defense obligations owed by the Subcontractor Defendants. This necessarily creates an insured contract under the Ironshore Excess Policy and puts the Plaintiffs and the Subcontractor Defendant in conflict as to the availability of insurance under the Ironshore Excess Policy to satisfy the claims made in the Underlying Action and the indemnity obligations.

64.     Plaintiffs have been required to hire the undersigned to prosecute this action and are contractually obligated to compensate the undersigned for their services. Plaintiffs claim their attorneys' fees, legal assist fees, and costs pursuant to §§ 627.428, 57.104, 57.041, and/or 626.9373, Fla. Stat., and/or § 542.060 Tx. Ins. and §38.001 Tx. Civ. Prac. & Rem. which are/may be applicable to this litigation.

65.     All parties having any interest in the declarations sought and all other persons having interest therein or adversely affected are joined in this action.

66.     It is also requested that this Court retain jurisdiction for supplemental relief pursuant to §86.061 Florida Statutes. Said supplemental relief may include, but not be limited to, claims for damages and/or extra-contractual damages as appropriate, and any determinations relative to coverage for indemnification for the claim and/or the scope of coverage available for the damages alleged in the Underlying Action. Plaintiffs assert the instant allegation purely for the purpose of preserving said claims and are not seeking a declaration relative to any supplemental relief at this time.

WHEREFORE, the Plaintiffs respectfully request that this Honorable Court declare the rights of the parties as follows:

        a. That this Court has jurisdiction over the subject matter;

        b. That this Court has jurisdiction over the parties in this matter;

        c. That the Ironshore Excess Policy applies to the damages as alleged in the Underlying Action;

d. That Ironshore owes a duty to defend Plaintiffs from any and all claims in the Underlying Action;

e. That Ironshore owes a duty to indemnify Plaintiffs from any and all claims in the Underlying Action;

f. That the damages alleged in the Underlying Action constitute "property damage";

g. That the damages alleged in the Underlying Action constitute an "occurrence";

h. That the damages alleged in the Underlying Action constitute more than one "occurrence";

i. Whether the damages sustained constitute a covered loss under the Ironshore Excess Policy;

j. That the Ironshore Excess Policy provides coverage for Plaintiffs' liability;

k. The Subcontractor Defendants are insureds under the Ironshore Excess Policy;

l. Determine whether Florida or Texas law applies to the interpretation of the Gemini Policy;

m. That Plaintiffs have the right to control the defense in the Underlying Action due to the breach of the Policy;

n. That the Ironshore Excess Policy provides coverage for Plaintiffs' legal expenses incurred in addressing the claims of Southstar, Cottington, and Durban Road in the Underlying Action;

o. That Ironshore owes attorneys' fees and costs pursuant to §§ 627.428, 57.104, 57.041, and/or 626.9373, Fla. Stat., and/or § 542.060 Tx. Ins. and §38.001 Tx. Civ. Prac. & Rem.;

p. That this Court retain jurisdiction to grant supplemental relief pursuant to § 86.061, Florida Statutes, including but not limited to any determinations relative to coverage for indemnification for the claim and/or the scope of coverage available for the damages alleged in the Underlying Action and pursuit of extra-contractual damages; and

q. All other relief as this Honorable Court deems just and proper.

17

## COUNT III
## ACTION FOR DECLARATORY RELIEF
## AGAINST NAVIGATORS & DEMAND FOR JURY TRIAL

67.     Plaintiffs re-allege all allegations contained in paragraphs 1 through 53, and

incorporate them herein by reference.

68.     Plaintiffs have made claims under the Navigators Excess Policy for the

claims in the Underlying Action.

69.     Plaintiffs are in doubt as to their rights, duties, and obligations owed to them

pursuant to the Navigators Excess Policy, including, but not limited to:

a.  The applicability of the Navigators Excess Policy to the damages as alleged
    in the Underlying Action;

b.  The Subcontractor Defendants are insureds under the Navigators Excess
    Policy;

c.  Whether the damages alleged in the Underlying Action constitute "property
    damage";

d.  Whether the damages alleged in the Underlying Action constitute more than
    one "occurrence";

e.  Whether there is an "occurrence";

f.  Whether the damages sustained constitute a covered loss under the
    Navigators Excess Policy giving rise to a duty to defend the Plaintiffs in the
    Underlying Action; and

g.  Whether Texas or Florida law applies to the interpretation of the Navigators
    Excess Policy.

Thus, Plaintiffs are in need of and entitled to a judicial declaration of their rights,

duties and obligations, regarding the same under the Navigators Excess Policy. As such,

an actual controversy exists between Plaintiffs and Navigators.

70.     To the extent that it is determined that there is no defense obligations owed

to the Plaintiffs for the claims asserted in the Underlying Action based upon their status

as insureds under the Navigators Excess Policy, the Plaintiffs will seek to enforce their indemnity based defense obligations owed by the Subcontractor Defendants. This necessarily creates an insured contract under the Navigators Excess Policy and puts the Plaintiffs and the Subcontractor Defendant in conflict as to the availability of insurance under the Navigators Excess Policy to satisfy the claims made in the Underlying Action and the indemnity obligations.

71.    Plaintiffs have been required to hire the undersigned to prosecute this action and are contractually obligated to compensate the undersigned for their services. Plaintiffs claim their attorneys' fees, legal assist fees, and costs pursuant to §§ 627.428, 57.104, 57.041, and/or 626.9373, Fla. Stat., and/or § 542.060 Tx. Ins. and §38.001 Tx. Civ. Prac. & Rem. which are/may be applicable to this litigation.

72.    All parties having any interest in the declarations sought and all other persons having interest therein or adversely affected are joined in this action.

73.    It is also requested that this Court retain jurisdiction for supplemental relief pursuant to §86.061 Florida Statutes.  Said supplemental relief may include, but not be limited to, claims for damages and/or extra-contractual damages as appropriate and any determinations relative to coverage for indemnification for the claim and/or the scope of coverage available for the damages alleged in the Underlying Action. Plaintiffs assert the instant allegation purely for the purpose of preserving said claims and are not seeking a declaration relative to supplemental relief at this time.

WHEREFORE, the Plaintiffs respectfully request that this Honorable Court declare the rights of the parties as follows:

     a. That this Court has jurisdiction over the subject matter;

     b. That this Court has jurisdiction over the parties in this matter;

c. That the Navigators Excess Policy applies to the damages as alleged in the Underlying Action;

d. That Navigators owes a duty to defend Plaintiffs from any and all claims in the Underlying Action;

e. That Navigators owes a duty to indemnify Plaintiffs from any and all claims in the Underlying Action;

f. That the damages alleged in the Underlying Action constitute "property damage";

g. That the damages alleged in the Underlying Action constitute an "occurrence";

h. That the damages alleged in the Underlying Action constitute more than one "occurrence";

i. Whether the damages sustained constitute a covered loss under the Navigators Excess Policy;

j. That the Navigators Excess Policy provides coverage for Plaintiffs' liability in the Underlying Action;

k. The Subcontractor Defendants are insureds under the Navigators Excess Policy;

l. Determine whether Florida or Texas law applies to the interpretation of the Navigators Excess Policy;

m. That Plaintiffs have the right to control the defense in the Underlying Action due to the breach of the Policy;

n. That the Navigators Excess Policy provides coverage for Plaintiffs' legal expenses incurred in addressing the claims of Southstar, Cottington and Durban Road in the Underlying Action;

o. That Navigators owes attorneys' fees and costs pursuant to §§ 627.428, 57.104, 57.041, and/or 626.9373, Fla. Stat., and/or § 542.060 Tx. Ins. and §38.001 Tx. Civ. Prac. & Rem.;

p. That this Court retain jurisdiction to grant supplemental relief pursuant to § 86.061, Florida Statutes, including but not limited to any determinations relative to coverage for indemnification for the claim and/or the scope of coverage available for the damages alleged in the Underlying Action and pursuit of extra-contractual damages;

q.  All other relief as this Honorable Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury as to all claims and issues for which a right

to jury trial exists under the constitution of the State of Florida and/or the Florida Statutes.

Dated:  June 7, 2018

/s/ Mark A. Boyle
Mark A. Boyle
Florida Bar No. 0005886
Molly Chafe Brockmeyer
Florida Bar No. 105798
Justin M. Thomas
Florida Bar No. 0089405
Boyle & Leonard, P.A.
2050 McGregor Blvd.
Fort Myers, Florida 33901
(239) 337-1303
(239) 337-7674 – Facsimile
eservice@insurance-counsel.com
mboyle@insurance-counsel.com
mbrockmeyer@insurance-counsel.com
jthomas@insurance-counsel.com

21