UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:18-CV-1147-ORL-DCJ

HINES INTERESTS LIMITED PARTNERSHIP, a Texas limited partnership; URBAN OAKS BUILDERS, LLC, a Delaware limited liability company; 1662 MULTIFAMILY LLC, a Delaware limited liability company; HINES 1662ev MULTIFAMILY, LLC, a Delaware limited liability company; HINES INVESTMENT MANAGEMENT HOLDINGS LIMITED PARTNERSHIP, a Texas limited partnership; HIMH GP, LLC, a Delaware limited liability company; HINES REAL ESTATE HOLDINGS LIMITED PARTNERSHIP, a Texas limited partnership; JCH INVESTMENTS, Inc., a Texas corporation;

    Plaintiffs,

v.

SOUTHSTAR CAPITAL GROUP I, LLC, a Florida limited liability company; COTTINGTON ROAD TIC, LLC, a Delaware limited liability company; DURBAN ROAD TIC, LLC, a Delaware limited liability company; COLLIS ROOFING, INC., a Florida corporation; DA PAU ENTERPRISES, INC., a Florida corporation; FLORIDA CONSTRUCTION SERVICES, INC., a Florida corporation; STRUCTURAL CONTRACTORS SOUTH, INC., a Florida corporation; NAVIGATORS SPECIALTY INSURANCE COMPANY, a New York corporation; GEMINI INSURANCE COMPANY, a Delaware corporation; and IRONSHORE SPECIALTY INSURANCE COMPANY, an Arizona corporation,

Defendants.
_____/

**NAVIGATORS SPECIALTY INSURANCE COMPANY'S
OPPOSITION TO PLAINTIFF URBAN OAKS BUILDERS, LLC'S MOTION TO
TRANSFER VENUE [DOC. 47] AND INCORPORATED MEMORANDUM OF LAW**

Defendant, Navigators Specialty Insurance Company ("Navigators"), by and through its undersigned attorneys, submits this Response and Memorandum of Law in opposition to the Motion to Transfer Venue [Doc. 47] filed by Plaintiff Urban Oaks Builders, LLC ("UOB"), and respectfully requests that the Court deny UOB's Motion. In support, Navigators respectfully states as follows:

**INTRODUCTION**

This Court should deny UOB's Motion to Transfer Venue because UOB has failed to show by a preponderance of the evidence that a transfer of venue will best serve the interest of justice. Contrary to UOB's contention that the efficient administration of the bankruptcy estate requires transfer of this insurance coverage action to bankruptcy court, such transfer would likely slow and increase the cost of the adjudication of this action. Further, it would contravene the interest of justice to transfer a cause of action that revolves around issues where the place of occurrence of material events in the underlying construction defect action, Osceola County, occurred, and where UOB *originally chose to file this action*. It is within this Court's sound discretion to deny UOB's Motion to Transfer Venue, and for all the reasons stated in this memorandum in opposition, Navigators respectfully request that it does so.

**BACKGROUND**

This insurance coverage dispute (the "Coverage Action"), originally filed by UOB in Florida state court, arises from insurance claims related to a construction defect action arising out of the construction of a 306-unit apartment project in Celebration, Florida (the "Project"), in the matter styled *Southstar Capital Group I, LLC, et. al. v. 1662 Multifamily LLC, et. al.,* Case No.

2018-CA-000415, originally filed in the Circuit Court of the Ninth Judicial Circuit in and for Osceola County, Florida (the "Construction Defect Action"). [D.E. 2, at ¶¶ 21, 44].

Plaintiffs allege in this Coverage Action that, in connection with the Project, the developer, Hines Interests LP ("Hines") and UOB, the general contractor on the Project (collectively, "Hines/UOB"), procured insurance policies pursuant to a controlled insurance program ("CIP") through the insurer defendants Gemini Insurance Company ("Gemini"), Ironshore Specialty Insurance Company ("Ironshore"), and Navigators[1] (collectively, the "Insurer Defendants"). Specifically, Gemini issued a primary commercial general liability insurance policy to Hines/UOB, Ironshore issued an excess policy to Hines/UOB, and Navigators issued a second layer excess policy to Hines/UOB (collectively, the "Insurance Policies").

In 2016, UOB completed construction of the Project. Thereafter, Southstar Capital Group I, LLC ("Southstar") purchased the Project from its original owner, an affiliate of Hines. *Id.* at ¶42. On February 13, 2018, Southstar commenced Underlying Action against UOB and various business entities affiliated with Hines (collectively, the "Hines Entities"), asserting claims for damages caused by defects and deficiencies in the construction of the Project. *Id.* at ¶44-45. On June 7, 2018, the Hines Entities commenced this Coverage Action. On August 31, 2018, UOB commenced a Chapter 11 bankruptcy case in the United States Bankruptcy Court for the Southern District of Texas, Case No. 18-34892 (the "Bankruptcy Court"), and thereafter removed the Construction Defect Action to this Court.[2]

---

[1] Also included in the Hines/UOB CIP, but not included in this lawsuit, is Commercial Excess Liability Policy number EXC 2101385, issued by Great American Assurance Company with limits of $25 million each occurrence/$25 million aggregate limit (where applicable).
[2] Case No. 6:18-cv-01453-RBD-GJK.

## **MEMORANDUM OF LAW**

Courts within the Eleventh Circuit consider 28 U.S.C. § 1412 to be the appropriate authority under which a federal court may transfer a proceeding related to a bankruptcy proceeding to the district in which the bankruptcy court sits. *Chex Sys., Inc. v. DP Bureau, Ltd. Liab. Co.*, No. 8:10-cv-2465-T-33MAP, 2011 U.S. Dist. LEXIS 130392, at *5 n.1 (M.D. Fla. Nov. 10, 2011), citing *In re Bruno's, Inc.*, 227 B.R. 311, 323 (N.D. Ala. 1998); *In re Harnischfeger Indust., Inc.*, 246 B.R. 421, 434-35 (Bankr. N.D. Ala. 2000). However, some other courts consider 28 U.S.C. § 1404 to be the proper authority for this determination. *Id.* "The determination whether to transfer venue under 28 U.S.C. § 1412, however, requires the same analysis as under 28 U.S.C. § 1404(a)." *Id.*, citing *In re Emerson Radio Corp.*, 52 F.3d 50, 55 (3d Cir. 1995).

28 U.S.C. § 1404(a) provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The party seeking a transfer of venue "has the burden of persuading the trial court that the transfer is appropriate and should be granted." *Sterling v. Provident Life & Accident Ins. Co.*, 519 F. Supp. 2d 1195, 1204 (M.D. Fla. 2006). "In order to overcome the presumption in favor of Plaintiff's choice of forum, the movant must show the balance of convenience is 'strongly in favor' of the transfer." *American Aircraft Sales International, Inc. v. Airwarsaw, Inc.*, 55 F.Supp.2d 1347, 1351 (M.D. Fla. 1999). "The standard of transfer under § 1404(a) allows broad discretion of the trial court." *Id.*

The Eleventh Circuit has determined that a court should be somewhat restrictive in transferring actions, stating that "the plaintiff's choice of forum should not be disturbed unless the movant can show that it is clearly outweighed by other considerations." *Id.* "The decision to

4

transfer venue is within the discretion of the trial court, and each case should be decided on the particular facts." *Id.* When considering a motion to transfer venue, the Middle District of Florida has stated that the following seven (7) factors must be considered:

> Plaintiff's initial choice of forum, convenience of the parties and witnesses, relative ease of access to sources of proof, availability of compulsory process for witnesses, location of relative documents, financial ability to bear the cost of the change, and all other practical problems that make trial of the case easy, expeditious, and inexpensive.

*Sterling*, 519 F. Supp. 2d at 1204. Here, UOB chose its forum by filing the Coverage Action in a Florida court. The parties have retained counsel in Florida and proceeded in accordance with this forum selected by UOB. Had UOB wished to initially proceed in Texas, it should have selected that forum initially. UOB's Motion to Transfer Venue does not provide any countervailing arguments satisfying its burden to show that transfer is now appropriate.

**I. UOB'S BANKRUPTCY STATUS DOES NOT WARRANT TRANSFER OF THIS COVERAGE ACTION TO THE TEXAS BANKRUPTCY COURT.**

The primary basis of UOB's venue transfer request is that its bankruptcy status somehow automatically warrants a transfer for referral to the Texas Bankruptcy Court presiding over those proceedings. This argument fails. There is nothing about the existence of the bankruptcy case itself, other than the fact that it has been filed in Texas, to warrant a transfer of venue, and UOB's Motion to Transfer should be summarily denied.

**A. This Coverage Action Is Not a "Core" Proceeding And Transfer To The Texas Bankruptcy Court Would Only Increase Litigation Costs And Decrease Judicial Economy.**

This coverage dispute does not arise under the Bankruptcy Code. For this reason, contrary to the arguments asserted by UOB in its Motion to Transfer Venue, it is not a "core" proceeding. Rather, at best, it is a non-core proceeding because it is a claim that could have been (and in fact was) brought in a district court or a state court, regardless of the existence of the

5

bankruptcy proceeding. *See Control Ctr. L.L.C. v. Lauer*, 288 B.R. 269, 276-77 (M.D. Fla. 2002) ("If the proceeding does not invoke a substantial right created by the federal bankruptcy law and is one that could exist outside of bankruptcy is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but under 157(c)(1) it is "otherwise related" or a non-core proceeding.").

In a non-core proceeding, a bankruptcy judge may hear the matter and issue recommendations, but, absent the consent of the parties, cannot issue a final judgment. *British Am. Ins. Co. v. Fullerton (In re British Am. Ins. Co.)*, 488 B.R. 205, 219 (Bankr. S.D. Fla. 2013). The district court judge then considers the proposed findings and conclusions of the bankruptcy court and may accept, reject or modify them after a *de novo* review. *Id.*

Thus, in the event this case was to be transferred to the Texas Bankruptcy Court, judicial effort would actually be multiplied. As a result, the transfer of this matter will not resolve any alleged problems of inconsistent rulings or increased judicial economy, and, in fact, will only increase litigation costs for the parties. Accordingly, UOB has not shown, and cannot show, that there will be any increase in judicial economy or efficiency from the transfer of this matter and the Motion to Transfer Venue should be denied.

### B. The Proceeds Of The CIP Insurance Policies Are Not Property Of The Bankruptcy Estate.

It is well settled that all property of the debtor's estate is subject to the jurisdiction and protection of a bankruptcy court. However, to determine whether an insurance policy is property of an estate for purposes of § 541 of the Bankruptcy Code, courts distinguish between the insurance policies owned by the debtor and the proceeds payable under those policies. *In re Scott Wetzel Servs.*, 243 B.R. 802, 804 (Bankr. M.D. Fla. 1999).

"Although the law is clear that an insurance policy issued to the debtor will generally

constitute 'property of the estate', the question of whether the proceeds of an insurance policy are property of the estate must be analyzed in light of the facts of each case." *Id.*, quoting *Matter of Edgeworth*, 993 F.2d 51, 55 (5th Cir. 1993).  Thus, "a debtor will not have a cognizable interest in the proceeds of the typical liability policy because the proceeds will normally be payable only for the benefit of those harmed by the debtor under the terms of the insurance contract." *See id.* (holding that the proceeds of the Chapter 7 debtor's liability policies, which the debtor would not have a right to keep in any event, but which would be paid to third parties for whose benefit those policies were obtained, were not included in "property of the estate").  In other words, "[t]he question is not who owns the policies, but who owns the liability proceeds." *La. World Exposition, Inc. v. Fed. Ins. Co.(In re La. World Exposition, Inc.)*, 832 F.2d 1391, 1399 (5th Cir. 1987).

In *In re Edgeworth*, the debtor owned a malpractice insurance policy and claimed the debtor's estate's ownership of such policy prevented persons alleging the debtor's malpractice to proceed outside the bankruptcy court to collect under the policy.  The debtor relied on the doctrine that, in general, insurance policies are, under 541(a), property of the estate.  The court ruled against the debtor, stating: "[t]he overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on the claim." 993 F.2d 51, 55-56 (5th Cir. 1993).  "When a payment by an insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate." *Id.*

In the Motion to Transfer, UOB generically asserts that "almost the entire value of the bankruptcy estate consists of the insurance policies at issue" and/or that "most" of the Debtor's estate manifests in the Insurance Policies. [Doc. 47, pp. 9, 14].  However, UOB does not claim

that, assuming, *arguendo*, that any claims related to the Construction Defect Action are covered, that it has any right to receive and keep any of the proceeds of the Insurance Policies. UOB indisputably does not have any such right, as the policies are all third party liability policies. Further, there are no allegations that any of the claims arising from the Construction Defect Action exceed the maximum coverage under the CIP. Thus, assuming coverage is established, there is no reason to believe that the proceeds from the Insurance Policies are insufficient to cover the existing claims against UOB.

Accordingly, because the proceeds of the third party liability policies at issue in this Coverage Action would not likely be deemed property of the Debtor's estate, the Coverage Action should not be transferred to the Bankruptcy Court.

## II.   TRANSFERRING THE CASE TO TEXAS BANKRUPTCY COURT DOES NOT SERVE THE INTEREST OF JUSTICE.

While the fact that UOB chose a Florida court as its initial venue should be dispositive of the issue, UOB's Motion to Transfer Venue should be denied for the additional reason that UOB has failed to meet its burden in showing that transferring the case to Texas Bankruptcy Court would serve the interest of justice in consideration of the following seven (7) factors set forth by courts in the Middle District of Florida:

> Plaintiff's initial choice of forum, convenience of the parties and witnesses, relative ease of access to sources of proof, availability of compulsory process for witnesses, location of relative documents, financial ability to bear the cost of the change, and all other practical problems that make trial of the case easy, expeditious, and inexpensive.

*Sterling*, 519 F. Supp. 2d at 1204.

First, UOB's initial choice of forum is Florida. Second, as to the factors regarding convenience of the parties and witnesses, relative ease of access to sources of proof, availability of compulsory process for witnesses, and location of relative documents, UOB's Motion to

Transfer Venue seems to conveniently forget that UOB was involved in the construction of the Project, a 306-unit apartment complex, in Osceola County, Florida.  The place of occurrence of material events indisputably favors retaining venue in the Middle District of Florida.  Moreover, UOB has failed to specifically identify any of its key witnesses or outline the substance of their testimony that would weigh in favor of a transfer of the Coverage Action to Texas.  *See Moto Photo, Inc.. v. K.J. Broadhurst Enters.*, No. 3-01-CV-2282-L, 2003 U.S. Dist. LEXIS 1955, at *12 (N.D. Tex. Feb. 10, 2003) (a party seeking transfer based upon the convenience of witnesses "must specifically identify the key witnesses and outline the substance of their testimony.").

Finally, with respect to the remaining two (2) factors, financial ability to bear the cost of the change and all other practical problems that make trial of the case easy, expeditious, and inexpensive, as noted *supra*, the Texas Bankruptcy Court would likely not ever exercise jurisdiction to enter a final judgment in this Coverage Action.  Thus, a transfer of this case would only multiply, not decrease, litigation costs for the parties.

## **CONCLUSION**

UOB has failed to establish by a preponderance of the evidence that transfer to the Texas Bankruptcy Court is in for the convenience of parties and witnesses in the interest of justice.  For the foregoing reasons, Navigators respectfully requests that this Court deny UOB's Motion to Transfer Venue.

Dated:  September 26, 2018

                                                  Respectfully submitted,

                                                  */s/ Chelsea C. Harrison, Esq.*
                                                  REBECCA C. APPELBAUM, ESQ.
                                                  LEAD ATTORNEY
                                                  Florida Bar No.: 0179043
                                                  rebecca.appelbaum@arlaw.com
                                                  jenny.schroeder@arlaw.com

>CHELSEA C. HARRISON, ESQ.
>Florida Bar No.: 98536
>chelsea.harrison@arlaw.com
>lisa.stallard@arlaw.com
>
>ADAMS AND REESE LLP
>101 E. Kennedy Blvd., Suite 4000
>Tampa, Florida  33602
>(813) 402-2880 (Telephone)
>(813) 402-2887 (Facsimile)
>
>*Attorneys for Defendant Navigators Specialty Insurance Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of September, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF electronic notification system, which will send a notice of electronic filing to all parties of record.

>*/s/ Chelsea C. Harrison, Esq.*
>CHELSEA C. HARRISON, ESQ.
>Florida Bar No.: 98536